T.C. Summary Opinion 2009-119

UNITED STATES TAX COURT

REYNARD AND JOYCE M. CAMPBELL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3530-07S.                    Filed July 30, 2009.

Reynard and Joyce M. Campbell, pro sese.

<u>Shannon Edelstone</u>, for respondent.

WHERRY, <u>Judge</u>:  This case was heard pursuant to section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered

---

[1]All subsequent section references are to the Internal Revenue Code of 1986, as amended and in effect for the tax year at issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Petitioners are husband and wife. Respondent determined a $31,153 deficiency in petitioners' Federal income tax and a $6,230.60 accuracy-related penalty under section 6662(a) for petitioners' 2005 tax year. After concessions by the parties, the issues remaining before the Court are: (1) Whether petitioners are entitled to additional deductions claimed on Schedule C, Profit or Loss From Business, for insurance expenses, car and truck expenses, and expenses for business use of their home;[2] (2) whether petitioners are entitled to additional deductions claimed on Schedule E, Supplemental Income and Loss, for repairs to two multiunit dwellings used as rental properties and as petitioners' home (4319 and 4329 Rilea);[3] (3) whether petitioners were required to capitalize certain expenditures

_____

[2]Respondent has conceded that petitioners are entitled to a $1,444 Schedule C deduction for expenses for business use of their home. The amounts remaining in dispute relating to petitioners' claimed Schedule C deductions for business use of their home are $1,718 in depreciation and a $5,154 carryover loss from 2004. Those amounts are computational and will be resolved in the Rule 155 computation in accordance with our decision in Campbell v. Commissioner, T.C. Summ. Op. 2008-154, which concerned Mr. Campbell's 2004 tax year.

[3]The two rental properties are located at 4319 and 4329 Rilea Way in Oakland, California.

relating to 4319 and 4329 Rilea; and (4) whether petitioners are liable for an accuracy-related penalty under section 6662(a).[4]

<u>Background</u>

Some of the facts have been stipulated, and the stipulated facts and accompanying exhibits are hereby incorporated by reference into our findings. At the time they filed their petition, petitioners resided in California.

Reynard Campbell is a certified public accountant (C.P.A.), and Joyce Campbell is a PBX operator.[5] In 2005 Mr. Campbell was employed by Bay Area Rapid Transit (BART). In addition, Mr. Campbell maintained his own auditing and accounting business, with respect to which petitioners reported Schedule C gross income of $22,161 and a net profit of $11,062 on their 2005 joint Form 1040, U.S. Individual Income Tax Return.[6] Petitioners reported a Schedule E loss of $14,219 relating to 4319 and 4329 Rilea Way.[7]

---

[4]In addition, respondent made a $1,566 computational adjustment that resulted from adjustments to petitioners' net income from self-employment. That computational adjustment will be resolved in the Rule 155 computation that the Court will direct in accordance with this opinion.

[5]PBX stands for "private branch exchange". PBXs are privately owned telephone switching systems.

[6]Petitioners calculated that profit by subtracting $11,099 in reported business expenses from $22,161 in reported business income.

[7]Petitioners reported an actual loss of $25,716 by
(continued...)

On January 18, 2007, respondent issued a notice of deficiency disallowing many of petitioners' claimed Schedule C and E deductions. Petitioners filed a timely petition with this Court on February 12, 2007. A trial was held on March 21, 2008, in San Francisco, California.

## Discussion

### I. Burden of Proof

The Commissioner's determination of a taxpayer's liability is generally presumed correct, and the taxpayer bears the burden of proving that the determination is improper. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, pursuant to section 7491(a), the burden of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue." Petitioners have not established that they meet the requirements under section

---

[7](...continued) subtracting $85,895 in expenses and depreciation from $60,179 in rents received. But because of passive activity loss limitations, they were not allowed to deduct that entire loss in 2005. Although sec. 469(i) provides an exemption to the passive activity loss rules for taxpayers who "actively participated" in a rental real estate activity that allows such taxpayers to deduct a maximum loss of $25,000 per year related to the rental real estate activity, that exemption begins to phase out for taxpayers with modified adjusted gross income (AGI) in excess of $100,000. Sec. 469(i)(3)(A). Petitioners' modified AGI in 2005 was $121,562.

7491(a)(1) and (2) for such a shift.  Consequently, the burden of proof remains on them.

II.  General Deduction Rules

Deductions are a matter of legislative grace, and the taxpayer must maintain adequate records to substantiate the amounts of any deductions or credits claimed.  Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs.

Generally, the Court may allow for the deduction of a claimed expense even where the taxpayer is unable to fully substantiate it, provided the Court has an evidentiary basis for doing so.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  But see sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  In these instances, the Court is permitted to approximate the allowable expense, bearing heavily against the taxpayer whose inexactitude is of his or her own making.  Cohan v. Commissioner, supra at 544.

III. Deductibility of Repair Expenses Relating to Petitioners'
     Schedule E Business

Section 162(a) authorizes a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  A trade or business expense is ordinary for purposes of section 162 if it is normal or customary within a particular trade, business, or industry and

is necessary if it is appropriate and helpful for the development of the business.  Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Deputy v. du Pont, 308 U.S. 488, 495 (1940).  In contrast, "personal, living, or family expenses" are generally nondeductible.  Sec. 262(a).[8]

Respondent concedes that petitioners have substantiated $26,857 of the $37,076 in claimed Schedule E deductions for repair expenses.[9]  Respondent argues that petitioners have failed to substantiate the remaining $10,219.  The precise source of the $10,219 remaining in dispute is not entirely clear.  That amount appears to comprise in part $1,767.60 that Mr. Campbell paid on April 24, 2005, for wood flooring, $20.65 paid on August 12, 2005, for a related flooring installation kit, and $450 that Mr. Campbell paid Mrs. Campbell for contract labor.  The remainder

---

[8]Appendix A contains a summary of our conclusions as to each of the adjustments contained in the notice of deficiency. Appendix B contains a breakdown of the additional repair expenses that we are allowing petitioners to deduct.

[9]More specifically, respondent concedes that petitioners have substantiated $14,494 of repair expenses but contends that $1,789 of this amount is neither deductible nor depreciable.  The $1,789 comprises a wood floor and related installation kit costing $1,767.60 and $20.65, respectively.  Respondent would have petitioners capitalize those items and would allow depreciation, but not until 2006 or 2007--when they were placed in service.  This, in respondent's view, leaves $12,705 in deductible 2005 repair expenses.  Respondent also concedes that petitioners have substantiated another $12,363 in repair expenses but argues that those expenses must be capitalized.  Petitioners agree that $6,016.32 of the $12,363 must be capitalized.  The parties dispute whether the remaining $6,346.68 of the $12,363 must be capitalized or is fully deductible.  We will address these issues in the next section of our opinion.

apparently relates to a multitude of purchases by Mr. Campbell at Home Depot and various hardware, flooring, paint, and other stores. Petitioners have provided receipts and bank records reflecting most of those purchases.

Regarding the $450 deduction petitioners claimed for "contract labor", Mr. Campbell testified that he paid his wife $450 to help him clean petitioners' rental units. A canceled check reflects that such a payment was made on May 23, 2005. At trial the Court apprised petitioners that it would allow the deduction if they could show that they reported the $450 as income on their joint return. In response, Mr. Campbell asserted: "Okay, well, I don't think that I can parse it out to that degree." Petitioners have not since demonstrated that they reported the $450 as income on their joint return. Accordingly, they have failed to demonstrate that the payment constituted a deductible business expense.

Petitioners have not demonstrated that the $1,767.60 wood flooring expense constitutes a deductible repair expense rather than a capital expenditure. Further, at trial Mr. Campbell admitted that the wood flooring was not placed in service until 2006 or 2007. Because the flooring is an item that must be capitalized and was not used until after 2005, petitioners cannot claim its cost as a deductible repair expense nor depreciate it in 2005. However, we will treat the $20.65 floor installation

kit as a tool which is separate from the wood flooring and need not be capitalized.

As for the remaining disputed Schedule E deductions for repairs, petitioners have not conclusively demonstrated to which unit(s) they were attributable. Nevertheless, through their receipts and bank records, petitioners have established that the expenses were incurred in 2005 except as to one or two small dollar items where the receipt date has faded and is no longer legible.

The bank records petitioners submitted merely reflect various purchases and their amounts. They do not specify exactly what petitioners purchased or for which specific unit(s) the purchases were made. They also do not provide enough information to determine with any certainty whether those expenses would need to be capitalized. Many are, however, for small items that do not appear to be capital in nature, and respondent has provided no evidence to the contrary. At trial Mr. Campbell acknowledged that petitioners are missing receipts but asserted: "I think you have to consider the fact that I normally shop at these places * * * for repair-type items, for my apartments, and I don't think in the documentation that I do have that there was any evidence that anything was personal in it." Many of those items cost $20 or less and were from retailers that sell repair and maintenance items. The numerous receipts petitioners provided are for the

most part consistent with the purchase of regular repair and maintenance items for petitioners' rental units. Respondent's concern for additional details as to each expense regardless of the materiality of the amounts at issue or the surrounding facts reflects a failure to see the forest for the trees.[10] The result has been a very inefficient and questionable use of the Examination Division's, Appeals', and the Court's time.

Petitioners have provided documentation for their Schedule E repair and maintenance expenses, but it is not perfect in all respects.[11] However, petitioners' Schedule E repair and maintenance expenses are not subject to the strict substantiation requirements of section 274. Under Cohan v. Commissioner, 39 F.2d at 543-544, petitioners may deduct most of their repair and

---

[10]Of particular note is the refusal to allow deductions for some items while allowing deductions for other items when all items were purchased at the same store on the same date. Respondent apparently disallowed those deductions because petitioners had misplaced receipts even though petitioners had produced credit card statements reflecting the purchases. For example, petitioners' credit card statement reflects that they made four purchases at Sincere Plumbing and Hardware on Feb. 19, 2005. Respondent disallowed deductions for three of those purchases on the basis that petitioners had misplaced the receipts while allowing petitioners a $108.73 deduction for one of those purchases--a faucet for a kitchen sink.

[11]At trial petitioners provided more than 1,000 pages of receipts, bank and accounting records, and tax returns and tax documents. Petitioners' records as to these small dollar items show (1) that each expense was incurred and paid, (2) the date on which each expense was incurred, and (3) the place where each expense was incurred. Petitioners' records are in many respects more complete and detailed than those maintained by many individual landlords in comparable rental businesses.

maintenance expenses because they have provided a sufficient evidentiary basis for doing so, which includes petitioners' uncontroverted trial testimony.[12]

Because petitioners' documentation does not permit tracing each expense to a particular unit, we will treat one-eighth as attributable to petitioners' personal unit and nondeductible under section 262(a).  We will allow petitioners to deduct the remaining seven-eighths of the amounts spent for each of the items listed infra note 13 and appendixes A and B to this

---

[12]We will not allow all of petitioners' claimed Schedule E repair and maintenance deductions because some of the claimed expenses are clearly nondeductible.  For example, petitioners claimed a $10.64 deduction for a Feb. 20, 2005, purchase at "Hollywood Video" and a $423.15 deduction for an Apr. 28, 2005, purchase at "Simayof San Francisco", a jewelry store.

opinion.[13]  However, we will require petitioners to capitalize and depreciate any expense that exceeds $250.[14]

IV.  Whether Petitioners Are Required To Capitalize Certain Expenditures Relating to 4319 and 4329 Rilea

After concessions, the parties dispute whether petitioners are required to capitalize $6,347 in expenses incurred to install or replace carpeting ($2,400), ceiling fans ($502), tile ($1,458), a toilet ($38), and baseboard molding ($474).  The remaining $1,475 was for labor performed on petitioners' rental properties.

---

[13](1) All of the $420.74 of expenses listed in the "Missing receipts" attachment to respondent's pretrial memorandum including the $267.96 paid to Home Depot on Oct. 6, 2005; (2) $133.60 paid to Home Depot on Feb. 19, 2005, for a "HOMER BUCKET", "1/2 RTD SHTG", and a "TOOLBAG"; (3) $36.03 paid to Home Depot in July 2005 for "CEDAR SHIMS", "SCREWS", and a 48-inch level; (4) the $20.65 flooring installation kit purchased on Aug. 12, 2005; (5) $4.34 paid to Laurel Ace Hardware and $20.35 paid to Foothill Hardware in Jan. 2005; (6) $6.17 for pipe tape and $17.27 paid to Home Depot, $6.39 and $13.73 paid to Foothill Hardware, and $3.24 paid to Laurel Ace Hardware in February 2005; (7) $20.04 and $6.27 paid to Foothill Hardware in March 2005; (8) $1.03 paid to Home Depot and $19.84 and $20.05 paid to Foothill Hardware in April 2005; (9) $19.52, $28.28, and $85.88 paid to Home Depot and $19.84 and $57.55 paid to Lowe's in July 2005; (10) $12.39, $25.21, $11.95, and $16.83 paid to Home Depot, $17.70 paid to Laurel Ace Hardware, and $3.39 paid to Foothill Hardware in August 2005; and (11) $7.60, $8.34, and $6.10 paid to Foothill Hardware and $6.48 paid to Home Depot in December 2005.

To the extent that any expense listed in the paragraph above is also listed in appendix B to this opinion, petitioners are allowed only one deduction for seven-eighths of the expense.

[14]Petitioners must use the Modified Accelerated Cost Recovery System and depreciate the property over a 5-year recovery period.

Petitioners argue that they were not required to capitalize those expenses because they "were for incidental repairs to their rental properties" and because "These costs neither materially added to the value of the property nor appreciably prolonged its life, but kept the properties in good operating condition."

Section 263 generally prohibits deductions for capital expenditures. Nondeductible capital expenditures include "Any amount paid out * * * for permanent improvements or betterments made to increase the value of any property". Sec. 263(a)(1). In contrast, deductible expenditures include those made merely to maintain property in operating condition. See Ill. Merch. Trust Co. v. Commissioner, 4 B.T.A. 103, 106 (1926) ("A repair is an expenditure for the purpose of keeping the property in an ordinarily efficient operating condition."). The distinction between a nondeductible capital expenditure and a deductible repair is summarized in section 1.162-4, Income Tax Regs.:

> The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense, provided the cost of acquisition or production or the gain or loss basis of the taxpayer's plant, equipment, or other property, as the case may be, is not increased by the amount of such expenditures. Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, shall either be capitalized and depreciated in accordance with section 167 or charged against the depreciation reserve if such an account is kept.

The deductibility of repair expenses also depends upon the context in which the repairs are made. Courts have held that expenses incurred as part of a general plan of rehabilitation must be capitalized even if they would have been deductible as ordinary and necessary business expenses if separately incurred. See United States v. Wehrli, 400 F.2d 686, 689 (10th Cir. 1968); Norwest Corp. & Subs. v. Commissioner, 108 T.C. 265, 280 (1997).

Although it is a close call, petitioners may deduct the amounts paid for the tile, baseboard molding, and toilet because we are satisfied that those expenses were incurred to maintain rather than improve the rental units.

For the reasons provided below, petitioners may not deduct the carpeting, ceiling fan, and labor costs. Petitioners are required to capitalize those expenses. Concerning the carpeting, respondent correctly notes that petitioners did not provide any evidence (aside from Mr. Campbell's self-serving testimony) "as to when the original carpet was purchased in each apartment unit and when each unit's carpet was replaced." In any event, the cost of the original carpet should have been capitalized when it was installed, and the remaining undepreciated cost of the carpet should have been deducted when it was removed and scrapped. The purchase of new carpeting to replace existing carpeting was an improvement or replacement and not a repair. Accordingly, petitioners are required to capitalize and depreciate it.

Mr. Campbell testified that the ceiling fans were purchased as decorative items to be added to the rental units "in place of the lights." By Mr. Campbell's own testimony, the ceiling fans were improvements or replacements and not repairs.

Petitioners paid the $1,475 in disputed labor expenses to someone named "Alex Cuevas". At trial Mr. Campbell was unable to remember exactly what Alex Cuevas had done for petitioners in 2005. Mr. Campbell testified that "Alex does a lot of things for me. I could not tell you specifically what Alex does, but what Alex will do is he will walk around with me and just simply make incidental repairs for me, like fix this, fix that, you know, just making incidental repairs." Because they have provided no other evidence as to the nature of Alex Cuevas's work on their rental properties, petitioners have not demonstrated that they are entitled to claim a current deduction rather than capitalize the cost of his labor.

V.   Automobile Expenses Subject to Strict Substantiation Under Section 274(d)

Certain business expenses described in section 274(d) are subject to strict substantiation rules that supersede the Cohan doctrine. Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274(d) applies to: (1) Any traveling expense, including meals and lodging away from home; (2) entertainment, amusement,

and recreational expenses; (3) any expense for gifts; or (4) the use of "listed property", as defined in section 280F(d)(4), including passenger automobiles. To deduct expenses to which section 274(d) applies, the taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony: (1) The amount of the expenditure or use, which includes mileage in the case of automobiles; (2) the time and place of the travel, entertainment, or use; (3) its business purpose; and (4) the business relationship to the taxpayer of each expenditure or use. Sec. 274(d) (flush language).

The parties dispute petitioners' claimed Schedule C deductions (which were based on the actual cost method) of $1,438 for automobile insurance[15] and $1,814 for car and truck expenses.[16] Respondent also disputes $3,678 of the $4,357 in

---

[15]That amount comprises $1,269.20 that Mr. Campbell paid his automobile insurance company and $169 in membership fees that he paid the American Automobile Association.

[16]In his general ledger Mr. Campbell listed $2,728.66 in automobile expenses relating to his Schedule C business. He asserts that he used the Nissan Maxima 66.48 percent for business, which explains the claimed $1,814 deduction ($2,728.66 x 66.48%). It is unclear how he came up with his percentage of business use, particularly in light of his less-than-perfect recordkeeping.

We also note that the parties had disputed whether petitioners were entitled to $1,961 in claimed Schedule C deductions for depreciation and sec. 179 expense. On brief, petitioners concede that issue.

auto and travel expenses that petitioners claimed as deductions on Schedule E. Petitioners concede that item on brief.

Mr. Campbell owns four automobiles: (1) A 2004 Nissan Maxima; (2) a 1980 Toyota pickup truck (model unknown); (3) a 1998 Honda Civic; and (4) a 2002 Chevrolet Impala. Mr. Campbell testified that the Nissan Maxima is used for his Schedule C business and that the Toyota truck is used for his Schedule E business but that "the personal automobiles are used sometimes in business." He then apparently conceded that petitioners are not entitled to any deductions relating to the Honda Civic or the Chevrolet Impala.[17] After the parties' concessions, all of the disputed automobile-related deductions appear to be Schedule C deductions relating to the Nissan Maxima.

Mr. Campbell has presented a copy of a day planner in an attempt to satisfy the requirements of section 274(d). He has fallen far short. The day planner entries are devoid of much vital information: they do not list which of Mr. Campbell's four automobiles were used, the number of miles traveled (the amount of use), or the specific business purpose of those miles. Some of the entries are incomprehensible. Moreover, at trial Mr. Campbell conceded that a $750 payment and a $446 payment that

_____

[17]Although petitioners had claimed a Schedule C deduction for automobile insurance paid on all four vehicles, at trial Mr. Campbell testified that an adjustment was warranted and that "I think that the relative percentage of the Nissan Maxima and the truck to the whole value should be allowed."

petitioners claimed in Schedule C deductions for automobile expenses are nondeductible personal expenses related to the Chevrolet Impala.

Petitioners have provided receipts for parking, fuel, and repair expenses. But there is no way of telling to which of Mr. Campbell's four automobiles they relate. Regarding the parking fees, at trial Mr. Campbell testified that although the garage at which he parked is near his place of employment with BART, he needed his car (apparently the Nissan Maxima) "to deal with business as it arises." As to the Nissan Maxima, he also testified

> I should get to take a 100 percent deduction; however, I only take a 66 percent deduction because * * * I consider it a commute from my home to my job, but since I'm required to come back, the first thing I'm required to do when I return from my job or even if there's an emergency or whatever else, is to check out those apartments, okay.

Mr. Campbell's conclusory testimony is strained, and we reject it.[18] Petitioners have not satisfied the strict substantiation requirements of section 274(d) with respect to the Nissan Maxima. See sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Accordingly, we sustain respondent's

---

[18]Petitioners live in one of the four units in 4319 Rilea and rent out the other three units. Mrs. Campbell testified that 4329 Rilea, which also contains four units, is "about [a] quarter of a block" away from 4319 Rilea and that it takes her "about three minutes" to walk from 4319 Rilea to 4329 Rilea.

adjustments as to petitioners' claimed Schedule C deductions for insurance ($1,438)[19] and for car and truck expenses ($1,814).

VI.  Section 6662 Penalty

Under section 7491(c), respondent bears the burden of production with respect to petitioners' liability for the section 6662(a) penalty.  This means that respondent "must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty."  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Respondent has done so.

Subsection (a) of section 6662 imposes an accuracy-related penalty on an underpayment of tax that is equal to 20 percent of any underpayment that is attributable to a list of causes in subsection (b).  Among the causes justifying the imposition of the penalty are (1) negligence or disregard of rules or regulations and (2) any substantial understatement of income tax. Section 6662(c) defines negligence as "any failure to make a reasonable attempt to comply with the provisions of this title". "[D]isregard" is defined to include "any careless, reckless, or intentional disregard."  Id.  Under caselaw, "'Negligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967),

---

[19]That is, except as to $92 that respondent has conceded.

affg. on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).

There is a "substantial understatement" of income tax for an individual in any tax year where the amount of the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return for the taxable year or (2) $5,000. Sec. 6662(d)(1)(A).  However, the amount of the understatement is reduced to the extent attributable to an item (1) for which there is or was substantial authority for the taxpayer's treatment thereof, or (2) with respect to which the relevant facts were adequately disclosed on the taxpayer's return or an attached statement and there is a reasonable basis for the taxpayer's treatment of the item.  See sec. 6662(d)(2)(B).

There is an exception to the section 6662(a) penalty when a taxpayer can demonstrate (1) reasonable cause for the underpayment and (2) that the taxpayer acted in good faith with respect to the underpayment.  Sec. 6664(c)(1).  Regulations promulgated under section 6664(c) further provide that the determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances."  Sec. 1.6664-4(b)(1), Income Tax Regs.

On brief, petitioners argue only that they are not liable for the penalty because their claimed deductions were proper.

They have not even attempted to demonstrate reasonable cause and good faith with respect to the underpayment.

Because Mr. Campbell is a C.P.A. who knew or should have known that petitioners were claiming many deductions to which they were not entitled, petitioners were negligent in underpaying their 2005 Federal income tax. Because they have not demonstrated reasonable cause and good faith for the underpayment, we sustain the section 6662(a) penalty.[20]

The Court has considered all of petitioner's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing and concessions made by the parties,

Decision will be entered

under Rule 155.

---

[20]Because the underpayment is attributable to negligence, we need not determine whether after accounting for respondent's concessions and the deductions that we have allowed, petitioners substantially understated their 2005 Federal income tax liability.

APPENDIX A

Summary of Our Conclusions as to Each of the Adjustments in the Notice of Deficiency

| Adjustment | Amount of Adjustment | Amount Conceded by P and/or R | Additional Deduction Allowed as a Result of Our Opinion (if any) |
|---|---|---|---|
| Schedule E: Depreciation Expense or Depletion | $17,117 | Parties agree that Ps are entitled to a $15,156 deduction. | $0 |
| Schedule E: All Other Rental Expenses Claimed | $64,519 | Ps concede $3,678 in auto and travel deductions.  R concedes that Ps have substantiated $26,857 of repair expenses.[1]  The parties have settled the remaining Schedule E deductions for all other rental expenses (e.g., utilities and taxes). | $8,760.63[2] |
| Schedule C: Meals and Entertainment | $1,321 | P concedes $1,047.  R concedes $274. | $0 |

[1]The parties dispute whether a portion of the repair expenses must be capitalized. We addressed that issue in our opinion.

[2]Appendix B contains a detailed list of expenses that we are allowing petitioners to deduct to the extent of seven-eighths of the stated amounts.  Petitioners must capitalize and depreciate any expense over $250.  Petitioners must use the Modified Accelerated Cost Recovery System and depreciate the property over a 5-year recovery period.

| | | | |
|---|---|---|---|
| Schedule C: Insurance (Other Than Health) | $1,438 | R concedes $92. | $0 |
| Schedule C: Car and Truck Expenses | $1,814 | N/A | $0 |
| Schedule C: Depreciation and Sec. 179 Expense | $1,961 | P concedes all $1,961. | $0 |
| Schedule C: Other Expenses | $2,204 | Parties agree that Ps are entitled to a $1,678 deduction. | $0 |
| Schedule C: Expenses for Business Use of Home | $11,062 | Parties agree that Ps are entitled to a $1,444 deduction. | Depreciation and carryover loss will be resolved in Rule 155 computation. |
| Schedule C: All Other Expenses Claimed | $2,361 | Parties agree that Ps are entitled to a $2,304 deduction. | $0 |
| Self Employment Adjusted Gross Income Adjustment | ($1,566) | N/A | Issue will be resolved in Rule 155 computation. |

APPENDIX B

Additional Deductible Schedule E Expenses

| Date of Purchase | Seller | Amount |
|---|---|---|
| 1/06/2005 | Kelly-Moore | $55.83 |
| 1/13/2005 | Home Depot | $86.88 |
| 1/18/2005 | Airport Appliance | $937.32 |
| 1/20/2005 | Airport Appliance | $318.64 |
| 1/19/2005 | Foothill Home Center | $47.87 |
| 1/21/2005 | Laurel Ace Hardware | $14.30 |
| 1/23/2005 | Home Depot | $394.44 |
| 1/23/2005 | Home Depot | $394.44 |
| 1/25/2005 | Laurel Ace Hardware | $2.14 |
| 1/27/2005 | Foothill Hardware | $9.79 |
| 1/31/2005 | Frigidaire Consumer Service | $73.03 |
| 2/19/2005 | Home Depot | $5.40 |
| 2/19/2005 | Home Depot | $33.60 |
| 2/19/2005 | Sincere Plumbing and Hardware | $300.64 |

| | | |
|---|---|---|
| 2/19/2005 | Sincere Plumbing and Hardware | $50 |
| 2/19/2005 | Sincere Plumbing and Hardware | $21.74 |
| 3/13/2005 | Home Depot | $41.72 |
| 3/24/2005 | Home Depot | $25.60 |
| 4/06/2005 | Home Depot | $142.08 |
| 4/19/2005 | Home Depot | $103.23 |
| 5/06/2005 | Laurel Ace Hardware | $4.64 |
| 5/10/2005 | Sears Roebuck | $10.86 |
| 5/21/2005 | Home Depot | $86.34 |
| 5/30/2005 | Home Depot | $20 |
| 6/10/2005 | Home Depot | $16.82 |
| 6/11/2005 | Laurel Ace Hardware | $16.69 |
| 6/13/2005 | Sears Roebuck | $32.61 |
| 6/19/2005 | Home Depot | $183.79 |
| 7/03/2005 | Home Depot | $950.87 |
| 7/07/2005 | Laurel Ace Hardware | $6.42 |
| 7/09/2005 | Home Depot | $146.95 |

| | | |
|---|---|---|
| 7/10/2005 | Home Depot | $24.99 |
| 7/10/2005 | Home Depot | $154.36 |
| 7/11/2005 | Home Depot | $238.11 |
| 7/16/2005 | Home Depot | $72.98 |
| 7/23/2005 | Home Depot | $184.76 |
| 7/30/2005 | Floor Dimensions | $1,429.23 |
| 8/06/2005 | Sincere Plumbing and Hardware | $739.48 |
| 8/09/2005 | Foothill Home Center | $73.70 |
| 8/20/2005 | Home Depot | $435.36 |
| 9/16/2005 | Office Depot | $22.27 |
| 9/24/2005 | Laurel Ace Hardware | $5.59 |
| 10/03/2005 | Lowe's | $424.38 |
| 10/06/2005 | Home Depot | $267.96 |
| 10/07/2005 | Home Depot | $45.22 |
| 10/09/2005 | Laurel Ace Hardware | $18.36 |
| 10/22/2005 | Laurel Ace Hardware | $3.89 |
| 10/25/2005 | DAL-Tile | $5.79 |
| 10/29/2005 | Foothill Home Center | $20.65 |

| | | |
|---|---|---|
| 11/20/2005 | Home Depot | $26 |
| 12/03/2005 | Foothill Home Center | $8.34 |
| 12/17/2005 | Foothill Hardware | $6.10 |
| 12/23/2005 | Home Depot | $6.48 |
| 12/23/2005 | Laurel Ace Hardware | $11.95 |